MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
FREDIS MALDONADO, IVIS GUEVARA
SANCHEZ, JOSE R. JACO, and PABLO
GOMEZ, *individually and on behalf of others*
*similarly situated,*

                         *Plaintiffs*,

         -against-

FIRST LINE CONTRACTING GROUP INC.
(D/B/A FIRST LINE CONTRACTING),
MIKE MOUROUNAS, PETER DOE,
ASPIRO DOE, and MIKE DOE,

                         *Defendants.*
-------------------------------------------------------X

                    **COMPLAINT**

     **COLLECTIVE ACTION UNDER**
        **29 U.S.C. § 216(b)**

            **ECF Case**

Plaintiffs Fredis Maldonado, Ivis Guevara Sanchez, Jose R. Jaco, and Pablo Gomez ,

individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by and through

their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and as

against First Line Contracting Group Inc. (d/b/a First Line Contracting), ("Defendant

Corporation"), Mike Mourounas, Peter Doe, Aspiro Doe, and Mike Doe, ("Individual

Defendants"), (collectively, "Defendants"), allege as follows:

## NATURE OF ACTION

    1.      Plaintiffs are former employees of Defendants First Line Contracting Group Inc.

(d/b/a First Line Contracting), Mike Mourounas, Peter Doe, Aspiro Doe, and Mike Doe.

2.      Defendants own, operate, or control a construction company, located at 24-38 47th St. Astoria, NY 11103 and 7-30 130th St. College Point, NY, 11356 under the name "First Line Contracting".

3.      Upon information and belief, individual Defendants Mike Mourounas, Peter Doe, Aspiro Doe, and Mike Doe, serve or served as owners, managers, principals, or agents of Defendant Corporation and, through this corporate entity, operate or operated the construction corporation as a joint or unified enterprise.

4.      Plaintiffs were employed as roofers and mechanics at the construction corporation located at 24-38 47th St. Astoria, NY 11103 who controlled several publicly and privately funded construction projects but not limited to the following: Governors Island National Park (New York, New York), Southside United Housing (Brooklyn, New York), 420 Avenue P (Brooklyn, New York), 570 E 137th Street (Bronx, New York), 850 Grand Street (Brooklyn, New York), 34-11 Beach Channel Dr. (Queens, New York),  2315 Jericho Turnpike (Garden City Park, New York), 911 Erskine (Brooklyn, New York) 702 Vandalia Avenue (Brooklyn, New York), 775 Cortona Park (Bronx, New York), and/or 1488 New York Avenue (Brooklyn, New York), (hereinafter referred to as "work projects").

5.      Defendants and/or entities affiliated with or controlled by Defendants did works projects, mainly in New York.

6.      At all times relevant to this complaint, Defendants failed to pay Plaintiffs the New York State mandated "prevailing wages" that they were entitled to receive for work performed on works projects pursuant to New York contracts entered into between the Defendants and entities including but not limited to municipal services on whose behalf the Plaintiffs performed work.

7.      Said contracts required the Defendants to pay the Plaintiffs and those similarly

situated at so-called prevailing wage rates for the localities in which the work was performed.  Said prevailing wage rates were determined by reference to the wages set forth in collective bargaining agreements between bona fide labor organizations and employers in the private sector, performing public or private work.

8.　　Depending on the particular contract and the type of work performed, the prevailing regular rate of wages on work performed for the Defendants ranged from approximately $25.00 to $63.00 an hour, depending on the locality and contract.  For work performed on weekends, the prevailing wage amounted to time and a half or in some cases double time, for work performed on weekends, and, in some counties, call for an additional amount of money on top of the half time premium.

9.　　At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate overtime compensation for the hours that they worked at the one and a half times rate of the required prevailing wage rate, in violation of the New York Labor Law and the Fair Labor Standards Act.

10.　　Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

11.　　Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

12.　　At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the prevailing wage rate and overtime compensation required by federal and state law and regulations.

13.    Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for third party beneficiary breach of contract claims pursuant to Fed. R. Civ. P. 223 arising from Defendant's failure to pay prevailing wages as mandated by NYLL § 220, for unpaid overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 et seq. and 650 et seq. (the "NYLL"), including applicable liquidated damages, interest, attorneys' fees and costs.

14.    Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

15.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

16.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims, including the unpaid prevailing wage work, occurred in this district, Defendants maintain their offices and businesses within this district, and Defendants operate a construction company located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

*Plaintiffs*

17.    Plaintiff Fredis Maldonado ("Plaintiff Maldonado" or "Mr. Maldonado") is an adult individual residing in Kings County, New York.

18.     Plaintiff Maldonado was employed by Defendants at Firstline Contracting from approximately September 16, 2017 until on or about January 28, 2020.

19.     Plaintiff Ivis Guevara Sanchez ("Plaintiff Guevara" or "Mr. Guevara") is an adult individual residing in Kings County, New York.

20.     Plaintiff Guevara was employed by Defendants at Firstline Contracting from approximately September 2017 until on or about January 28, 2020.

21.     Plaintiff Jose R. Jaco ("Plaintiff Jaco" or "Mr. Jaco") is an adult individual residing in Kings County, New York.

22.     Plaintiff Jaco was employed by Defendants at First Line Contracting from approximately July 2017 until on or about October 6, 2017.

23.     Plaintiff Pablo Gomez ("Plaintiff Gomez" or "Mr. Gomez") is an adult individual residing in Kings County, New York.

24.     Plaintiff Gomez was employed by Defendants at First Line Contracting from approximately June 16, 2017 until on or about April 10, 2018.

*Defendants*

25.     At all relevant times, Defendants owned, operated, or controlled a construction company, located at 24-38 47th St. Astoria, NY 11103 and 7-30 130th St. College Point, NY, 11356 under the name "First Line Contracting".

26.     Upon information and belief, First Line Contracting Group Inc. (d/b/a First Line Contracting) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 24-38 47th St. Astoria, NY 11103 and 7-30 130th St. College Point, NY, 11356.

27.     Defendant Mike Mourounas is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Mike Mourounas is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Mike Mourounas possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

28.     Defendant Peter Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Peter Doe is sued individually in his capacity as a manager of Defendant Corporation. Defendant Peter Doe possesses operational control over Defendant Corporation and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

29.     Defendant Aspiro Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Aspiro Doe is sued individually in his capacity as a manager of Defendant Corporation. Defendant Aspiro Doe possesses operational control over Defendant Corporation and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

30.     Defendant Mike Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Mike Doe is sued individually in his capacity as a manager of Defendant Corporation. Defendant Mike Doe possesses operational control over Defendant Corporation and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

31.     Defendants operate a construction company located in multiple neighborhoods in Queens.

32.     Individual Defendants, Mike Mourounas, Peter Doe, Aspiro Doe, and Mike Doe, possess operational control over Defendant Corporation, possess ownership interests in Defendant Corporation, or control significant functions of Defendant Corporation.

33.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

34.     Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

35.     Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

36.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

37.     Upon information and belief, Individual Defendant Mike Mourounas operates Defendant Corporation as either an alter ego of himself and/or failed to operate Defendant Corporation as an entity legally separate and apart from himself, by among other things:

    a)  failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a Corporation,

    b)  defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

    c)  transferring assets and debts freely as between all Defendants,

    d)  operating Defendant Corporation for his own benefit as the sole or majority shareholder,

    e)  operating Defendant Corporation for his own benefit and maintaining control over this corporation as a closed Corporation,

    f)  intermingling assets and debts of his own with Defendant Corporation,

    g)  diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect his own interests, and

    h)  Other actions evincing a failure to adhere to the corporate form.

38.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

39.     In each year from 2017 to 2020, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

40.     In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the construction corporation on a daily basis are goods produced outside of the State of New York.

## *Individual Plaintiffs*

41.     Plaintiffs are former employees of Defendants who were employed as roofers and mechanics. Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

## *Plaintiff Fredis Maldonado*

42.     Plaintiff Maldonado was employed by Defendants from approximately September 16, 2017 until on or about January 28, 2020.

43.     Defendants employed Plaintiff Maldonado as a roofer in many projects throughout New York including public and private projects throughout New York.

44.     Plaintiff Maldonado regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

45.     Plaintiff Maldonado's work duties required neither discretion nor independent judgment.

46.     Throughout his employment with Defendants, Plaintiff Maldonado regularly worked in excess of 40 hours per week.

47.     From approximately September 2017 until on or about January 28, 2020, Plaintiff Maldonado worked from approximately 7:00 a.m. until on or about 3:30 p.m. to 4:30 p.m., 5 days a

week, from approximately 7:00 a.m. until on or about 3:30 to 4:30 p.m., Monday through Friday, and from approximately 7:00 a.m. until on or about 3:30 p.m., Saturday, one week every month (typically 38.75 to 51.50 hours per week).

48.     From approximately September 2017 until on or about January 2020, Defendants paid Plaintiff Maldonado his wages by check.

49.     Throughout his employment, when he worked on Saturdays, Defendants paid Plaintiff Maldonado his wages in cash.

50.     From approximately September 2017 until on or about December 2017, Defendants paid Plaintiff Maldonado $25.00 per hour.

51.     From approximately September 2017 until on or about December 2017, Defendants paid Plaintiff Maldonado a fixed salary of $200 per day on Saturdays.

52.     From approximately January 2018 until on or about December 2018, Defendants paid Plaintiff Maldonado $30.00 per hour.

53.     From approximately January 2018 until on or about December 2018, Defendants paid Plaintiff Maldonado a fixed salary of $200 per day on Saturdays.

54.     From approximately January 2019 until on or about January 2020, Defendants paid Plaintiff Maldonado $40.70 per hour.

55.     From approximately January 2019 until on or about January 2020, Defendants paid Plaintiff Maldonado a fixed salary of $200 per day on Saturdays.

56.     For approximately one week, Defendants did not pay Plaintiff Maldonado any wages for his work.

57.     Plaintiff Maldonado's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

58.     For example, Defendants required Plaintiff Maldonado to work an additional 1 hour past his scheduled departure time five to six days a week, and did not pay him for the additional time he worked.

59.     Plaintiff Maldonado was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

60.     Defendants took improper and illegal deductions from Plaintiff Maldonado's wages; specifically, Defendants deducted one hour from Plaintiff Maldonado's daily wages for meal breaks that were 45 minutes. Additionally, in two occasions, if Plaintiff Maldonado was 5 minutes late, he was deducted 30 minutes from his daily wages.

61.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Maldonado regarding overtime and wages under the FLSA and NYLL.

62.     Defendants did not provide Plaintiff Maldonado an accurate statement of wages, as required by NYLL 195(3).

63.     In fact, Defendants adjusted Plaintiff Maldonado's paystubs so that they reflected inaccurate wages and hours worked.

64.     Defendants did not give any notice to Plaintiff Maldonado, in English and in Spanish (Plaintiff Maldonado's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

65.     Defendants required Plaintiff Maldonado to purchase "tools of the trade" with his own funds—including one hammer, knifes, drills, and one angle grinder tool.

*Plaintiff Ivis Guevara Sanchez*

66.     Plaintiff Guevara was employed by Defendants from approximately September 2017 until on or about January 28, 2020.

67.     Defendants employed Plaintiff Guevara as a roofer.

68.     Plaintiff Guevara regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

69.     Plaintiff Guevara's work duties required neither discretion nor independent judgment.

70.     Throughout his employment with Defendants, Plaintiff Guevara regularly worked in excess of 40 hours per week.

71.     From approximately September 2017 until on or about January 28, 2020, Plaintiff Guevara worked from approximately 7:00 a.m. until on or about 3:30 p.m., 2 days a week, from approximately 7:30 a.m. until on or about 4:30 p.m., three days a week, and from approximately 7:00 a.m. until on or about 5:30 p.m., two Saturdays a month (typically 41.75 to 51.50 hours per week).

72.     Throughout his employment, Defendants paid Plaintiff Guevara his wages by direct deposit.

73.     From approximately September 2017 until on or about January 2020, Defendants paid Plaintiff Guevara $35.00 per hour for private jobs.

74.     From approximately September 2017 until on or about January 2020, Defendants paid Plaintiff Guevara $60.00 to $65.50 per hour for government jobs.

75.     Plaintiff Guevara's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

76.     For example, Defendants required Plaintiff Guevara to work an additional 1 hour past his scheduled departure time three days a week, and did not pay him for the additional time he worked.

77.     Plaintiff Guevara was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

78.     Defendants took improper and illegal deductions from Plaintiff Guevara's wages; specifically, Defendants deducted one hour from Plaintiff Guevara's daily wages for meal breaks that were 45 minutes.

79.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Guevara regarding overtime and wages under the FLSA and NYLL.

80.     Defendants did not provide Plaintiff Guevara an accurate statement of wages, as required by NYLL 195(3).

81.     In fact, Defendants adjusted Plaintiff Guevara's paystubs so that they reflected inaccurate wages and hours worked.

82.     Defendants did not give any notice to Plaintiff Guevara, in English and in Spanish (Plaintiff Guevara's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

83.     Defendants required Plaintiff Guevara to purchase "tools of the trade" with his own funds—including one hammer, knifes, and one meter.

*Plaintiff Jose R. Jaco*

84.     Plaintiff Jaco was employed by Defendants from approximately July 2017 until on or about October 6, 2017.

85.     Defendants employed Plaintiff Jaco as a roofer.

86.     Plaintiff Jaco regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

87.     Plaintiff Jaco's work duties required neither discretion nor independent judgment.

88.     Throughout his employment with Defendants, Plaintiff Jaco regularly worked in excess of 40 hours per week.

89.     From approximately July 2017 until on or about October 6, 2017, Plaintiff Jaco worked from approximately 8:00 a.m. until on or about 4:30 p.m., 5 days a week (typically 42.50 hours per week).

90.     From approximately July 2017 until on or about end of July 2017, Defendants paid Plaintiff Jaco his wages by check.

91.     From approximately August 2017 until on or about October 2017, Defendants paid Plaintiff Jaco his wages by direct deposit.

92.     From approximately July 2017 until on or about July 2017, Defendants paid Plaintiff Jaco $40.70 per hour.

93.     From approximately August 2017 until on or about October 6, 2017, Defendants paid Plaintiff Jaco $41.50 per hour and $32.27 per supplemental benefit.

94.     Plaintiff Jaco was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

95.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Jaco regarding overtime and wages under the FLSA and NYLL.

96.     Defendants did not provide Plaintiff Jaco an accurate statement of wages, as required by NYLL 195(3).

97.     Defendants did not give any notice to Plaintiff Jaco, in English and in Spanish (Plaintiff Jaco's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

98.     Defendants required Plaintiff Jaco to purchase "tools of the trade" with his own funds—including one meter stick, one hammer, and knifes.

*Plaintiff Pablo Gomez*

99.     Plaintiff Gomez was employed by Defendants from approximately June 16, 2017 until on or about April 10, 2018.

100.    Defendants employed Plaintiff Gomez as a mechanic worker.

101.    Plaintiff Gomez regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

102.    Plaintiff Gomez's work duties required neither discretion nor independent judgment.

103.    Throughout his employment with Defendants, Plaintiff Gomez regularly worked in excess of 40 hours per week.

104.    From approximately June 16, 2017 until on or about December 22, 2017, Plaintiff Gomez worked from approximately 7:00 a.m. until on or about 3:00 p.m. to 5:00 p.m., Mondays through Fridays (typically 35 to 45 hours per week).

105.    From approximately January 16, 2018 until on or about April 10, 2018, Plaintiff Gomez worked from approximately 7:00 a.m. until on or about 3:00 to 5:00 p.m., Mondays through Fridays (typically 35 to 45 hours per week).

106.    Throughout his employment, Defendants paid Plaintiff Gomez his wages in a combination of check and cash.

107.    From approximately June 2017 until on or about August 2017, Defendants paid Plaintiff Gomez $40.70 per hour.

108.    From approximately August 2017 until on or about October 2017, Defendants paid Plaintiff Gomez $25.00 per hour.

109.    From approximately October 2017 until on or about December 2017, Defendants paid Plaintiff Gomez $35.00 per hour.

110.    From approximately January 2018 until on or about April 10, 2018, Defendants paid Plaintiff Gomez $63.00 per hour.

111.    Plaintiff Gomez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

112.    For example, Defendants required Plaintiff Gomez to work an additional 1 hour to 2 hours past his scheduled departure time every day, and did not pay him for the additional time he worked.

113.    Plaintiff Gomez was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

114.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Gomez regarding overtime and wages under the FLSA and NYLL.

115.    Defendants did not provide Plaintiff Gomez an accurate statement of wages, as required by NYLL 195(3).

116.    In fact, Defendants adjusted Plaintiff Gomez's paystubs so that they reflected inaccurate wages and hours worked.

117.    Defendants did not give any notice to Plaintiff Gomez, in English and in Spanish (Plaintiff Gomez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

118.    Defendants required Plaintiff Gomez to purchase "tools of the trade" with his own funds—including one drill, boots and blades.

*Defendants' General Employment Practices*

119.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate overtime compensation as required by federal and state laws.

120.    Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

121.    Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

122.    Defendants' time keeping system did not reflect the actual hours that Plaintiffs worked.

123.    Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

124.    Defendants paid Plaintiffs their wages in a combination of check and cash.

125.     Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

126.     Defendants failed to annex to and form a part of the public works contract of the schedule containing the prevailing rates of wages and supplemental benefits to be paid to workers who furnished labors for public works projects, as required by law.

127.     Defendants paid Plaintiffs (and similarly situated individuals) at a rate that was higher than the federal and state minimum wage rates, but lower than the prevailing rates or wages and supplements to which Plaintiffs (and similarly situated individuals) were entitled to.

128.     Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

129.     Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

130.     Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

131.     Defendants failed to provide Plaintiffs  and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum

wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

132.    Defendants failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

133.    Plaintiffs bring their FLSA overtime compensation and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

134.    At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA and willfully failing to keep records under the FLSA.

135.    The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

## VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

136.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

137.     At all times relevant to this action, Defendants were Plaintiffs' employers (and employers of the putative FLSA Class members) within the meaning of the Fair Labor Standards Act. 29 U.S.C. § 203(d). Defendants had the power to hire and fire Plaintiffs (and the FLSA Class members), controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for their employment.

138.     At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

139.     Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act. 29 U.S.C. § 203 (r-s).

140.     Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week, whether that rate was set by law or contract.

141.     Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

142.     Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

## VIOLATION OF THE OVERTIME PROVISIONS

## OF THE NEW YORK STATE LABOR LAW

143.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

144.     Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week, whether that rate was set by law or contract.

145.     Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

146.     Plaintiffs were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

## VIOLATION OF THE NOTICE AND RECORDKEEPING

## REQUIREMENTS OF THE NEW YORK LABOR LAW

147.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

148.     Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

149.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## FOURTH CAUSE OF ACTION

## VIOLATION OF THE WAGE STATEMENT PROVISIONS

### OF THE NEW YORK LABOR LAW

150.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

151.    With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

152.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

### FIFTH CAUSE OF ACTION

### BREACH OF CONTRACT

153.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

154.    Upon information and belief, the public works contracts entered into by Defendants contained, as a matter of fact or by operation of law, schedules of the prevailing rates of wages and supplemental benefits to be paid to Plaintiffs (and the FLSA class members).

155.    Those prevailing rates of wages and supplemental benefits were made a part of the public works contracts for the benefit of the Plaintiffs (and the FLSA members).

156.    Defendants breached the public works contracts by failing to pay Plaintiffs (and the FLSA members) the prevailing rates of wages and supplemental benefits for all labor performed upon the public works projects.

157.    As a result of its breach of the public works contracts, Defendants are liable to

Plaintiffs (and the FLSA members) for the value of the prevailing wages, supplements, and interest, in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### UNJUST ENRICHMENT

158.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

159.    Plaintiffs (and the FLSA members) conferred a benefit upon Defendants through the provision of labor as roofers and mechanic workers for public and private work projects for which they have not been properly paid.

160.    Defendants received the benefit of Plaintiffs' labor during the time period alleged in this complaint.

161.    Plaintiffs expected rightful compensation for their labor, at least at the prevailing wage and applicable overtime rates.

162.    When Defendants entered into the public work contracts at these public works projects, it agreed, as a matter of fact or by operation of law, to pay the required prevailing wage, overtime and supplemental benefit rates of pay to Plaintiffs (and the FLSA members).

163.    Defendant would be unjustly enriched if allowed to retain that benefit without compensating the Plaintiffs (and the FLSA members).

164.    As a result of this failure to pay at prevailing wages rates, Defendants willfully and unjustly enriched for work and services performed by Plaintiffs (and the FLSA members).

165.    That equity and good conscience require that the Defendants pay Plaintiffs (and the FLSA members) their *quantum meruit,* in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION

### QUANTUM MERUIT

166.  Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

167.  Plaintiffs (and the FLSA class members) performed numerous and valuable services at the request and for the benefit of Defendants. Plaintiffs (and the FLSA members) were not paid the reasonable value of those services.

168.  As a result, Defendants are liable to Plaintiffs (and the FLSA members) for the reasonable value of those services, less the non-prevailing wages already paid, plus interest, in an amount to be determined at trial.

**EIGHT CAUSE OF ACTION**

**RECOVERY OF EQUIPMENT COSTS**

169.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

170.    Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

171.    Plaintiffs were damaged in an amount to be determined at trial.

**NINETH CAUSE OF ACTION**

**UNLAWFUL DEDUCTIONS FROM WAGES IN VIOLATION**

**OF THE NEW YORK LABOR LAW**

172.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

173.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

174.    Defendants made unlawful deductions from Plaintiffs' wages including, but not limited to, deductions for meals they never ate.

175.    The deductions made from Plaintiffs' wages were not authorized or required by law.

176.    Through their knowing and intentional efforts to take unauthorized deductions from Plaintiffs' wages, Defendants willfully violated NYLL, Article 6, §§ 190 *et seq.*, and supporting New York State regulations.

Plaintiffs were damaged in an amount to be determined at trial.

## TENTH CAUSE OF ACTION

## UNLAWFUL DEDUCTIONS FROM WAGES IN VIOLATION

## OF THE NEW YORK LABOR LAW

177.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

178.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

179.    Defendants made unlawful deductions from Plaintiffs' wages; specifically, Defendants deducted one hour from Plaintiffs daily wages for meal breaks that were only 45 minutes.

180.    The deductions made from Plaintiffs' wages were not authorized or required by law.

181.    Through their knowing and intentional efforts to take unauthorized deductions from Plaintiffs' wages, Defendants willfully violated NYLL, Article 6, §§ 190 *et seq.*, and supporting New York State regulations.

Plaintiffs were damaged in an amount to be determined at trial.

## ELEVENTH CAUSE OF ACTION

## VIOLATION OF THE TIMELY PAYMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

182.     Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

183.     Defendants did not pay Plaintiffs on a regular weekly basis, in violation of NYLL §191.

184.     Defendants are liable to each Plaintiff in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)     Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)     Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)     Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(d)     Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(e)     Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid overtime compensation and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(f)     Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount

equal to 100% of their damages for the amount of unpaid overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(g)     Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(h)     Declaring that Defendants violated the timely payment provisions of the NYLL as to Plaintiffs;

(i)     Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(j)     Declaring that Defendants' violations of the provisions of the NYLL were willful as to Plaintiffs;

(k)     Awarding Plaintiffs damages for the amount of unpaid overtime compensation, and for any improper deductions or credits taken against wages as applicable

(l)     Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(m)     Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of overtime compensation shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(n)     Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(o)      Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(p)      Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(q)      All such other and further relief as the Court deems just and proper.

## JURY DEMAND

 Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York

April 17, 2020

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:      _____/s/ Michael Faillace_____
Michael Faillace [MF-8436]
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

January 30, 2020

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Fredis Maldonado

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                          30 de enero 2020

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

January 30, 2020

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Ivis Guevara Sanchez

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     30 de enero 2020

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

March 6, 2020

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Jose R. Jaco

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     6 de marzo 2020

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

February 24, 2020

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Pablo Gomez

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     24 de febrero 2020

*Certified as a minority-owned business in the State of New York*